84

## CIRCUIT COURT OF CHESTERFIELD COUNTY

Commonwealth of Virginia

    v.

Leis

February 15, 1989

Case No. CR88610946

By JUDGE JOHN F. DAFFRON, JR.

    I have reviewed the transcript of the hearing held on November 30, 1988, on the defense motion to suppress a warrantless search and seizure in a private residence and motion to suppress a warrantless vehicle search. For the reasons stated below, I have decided to deny both of these motions.

    For the purposes of these suppression motions, I find the following facts. On September 9, 1988, an officer of the Chesterfield County Police Department responded to a call at the residence of Mr. Roger S. Burns in the Bexley subdivision of this county. The nature of the call was that there was a white male sitting in a pickup truck in the driveway. (Transcript, November 30, 1988, hearing, p. 54). Upon arriving at the scene, the officer approached the truck and observed the defendant sitting in the truck and observed a beer bottle three-quarters full of liquid with a cloth wick attached sitting on the dashboard (T. 57).

    After failing to respond to the officer's questions, the defendant motioned toward the bottle with a cigarette lighter. (T. 59). The officer backed away and the defendant

navigated the truck out of the driveway, damaging a stone wall on the Burns property in the process. (T. 59).

Having learned by radio communication with police headquarters that the truck was registered to a party at an address in the neighborhood, the officer drove to that address (T. 60). Once there, he observed the truck parked in the driveway with the driver's door open. (T. 61). He approached it, detected a strong odor of gasoline, and observed and seized the bottle (which contained gasoline) with the wick still attached. (T. 64).

Several moments later, several other police officers arrived at the scene, including the police fire and arson investigator. (T. 11). The officers surrounded the house and observed the defendant yelling from an upstairs window. (T. 15). Having knowledge that the defendant's mother had a business nearby, the police contacted her in order that she could come and unlock the door to the house (T. 15-16).

The mother arrived some thirty minutes later. (T. 29). She opened the back door and led the officers upstairs to the defendant's bedroom. (T. 17). She attempted to convince the defendant to unlock that door, but he refused. (T. 18). At this point, the evidence indicates that the officers asked permission to break down the door and the mother indicated her assent. (T. 18). The defendant was then taken into custody and charged with a misdemeanor charge of hit and run property damage and two felonies: Communicating a threat to bomb a motor vehicle and possession of materials from which fire bombs can be made.

### The Warrantless Motor Vehicle Search

I am of the opinion that the gasoline bomb that was seized from the truck was in "plain view" and thus it was not a search subject to Fourth Amendment protection. The three prong test of the "plain view" doctrine, which may be gleaned from the plurality portion of the Supreme Court's opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-70 (1971), requires that (a) the officer must be lawfully in a position to view and seize the item, (b) the item must be discovered inadvertently, and (c) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject

to seizure. *Stokes v. Commonwealth*, 4 Va. App. 207, 209 (1987).

All three of these requirements are met in this case. First, the item was discovered inadvertently. In order to be inadvertent, the police may not "know in advance the location of the evidence and intent to seize it." *Coolidge*, at 470. Although he had seen it earlier on the dashboard, the officer had no basis for knowing that the bomb was currently on the floor.

Second, it is reasonable to assume that the officer recognized the gasoline filled bottle and wick as "evidence of a crime or contraband." Any reasonable person, much less a trained police officer, would recognize that a bottle containing gasoline with a wick attached is probably a Molotov cocktail and, as such, subject to seizure.

Third, the officer was lawfully in a position to view and seize the item. This is true for two alternative reasons: First, he had witnessed the truck being involved in a hit-and-run property damage offense. The Court in *Thims v. Commonwealth*, 218 Va. 85 (1977), held that a police officer having probable cause to believe that a car parked in a private driveway was the fruit of the crime of larceny had the right to enter the driveway to investigate the car. This is similar to the instant case where the car itself is evidence of the hit and run offense.

The second reason justifying the officer lawfully being on the property is the exigent circumstances involved. The Court in *Verez v. Commonwealth*, 230 Va. 405 (1985), lists ten factors that the courts should consider in evaluating warrantless entry. I find that this situation fulfills eight of these factors: Namely, the urgency and life threatening nature of the situation; the ease of destruction of the evidence; the inherent danger of the situation; the defendant's knowledge that the police were on his tail; the serious and potential violence of the offense; the knowledge that the subject was present, armed, and had recently entered the premises after hot pursuit. Thus, I hold that the seizure falls within the "plain view" exception to the warrantless search and seizure prohibition.

*The Warrantless Search and Seizure in a Private Residence*

I am of the opinion that the warrantless search and seizure in the defendant's home was justified by the consent exception to the warrantless arrest in a private home prohibition. To so hold, the Court must find that the defendant's mother consented to the entry of the police into the defendant's room and that she had the authority to consent to such an entry.

First, I find from an examination of all of the evidence that consent was given. Both officers testified that the mother indicated her permission to break down the door. (T. 18 and 88).

Second, I find that the mother had the legal authority to consent to a warrantless entry into the defendant's room. Under *United States v. Matlock*, 415 U.S. 164 (1974), the prosecution may show that a third party who possessed common authority over the premises consented to the search. The evidence presented indicated that although the bedroom was for the defendant's use, it was in the mother's house (T. 113), that she enters the room every day to clean it (T. 114), that the defendant never locks the door (T. 124), that he pays no set rent (T. 124), and that there is no lease agreement between the mother and the defendant (T. 125). From these facts, it is reasonable to assume that the mother had "joint access or control for most purposes," *Matlock*, at 650, and, therefore, could consent to the search.

The defense relies on the wording of this exception in *Black v. Commonwealth*, 223 Va. 277 (1982), which stated: "Consent to search given by one with common authority is valid as against the absent nonconsenting person with whom the authority is shared." The defense argues that because the defendant was present, no third party can give consent. However, the Court notes the holding in *Walls v. Commonwealth*, 2 Va. App. 639 (1986), that: "Although this language appears in *Matlock*, it was not included as part of the holding, but only as a reference to prior case law. Nothing in the holdings of *Matlock* or *Black* suggests that the validity of a third party consent is dependent upon the absence of the defendant." *Id.* at 651.

Thus, the mother could and did give consent to the search, and thus, the entry into the defendant's room

was valid. I, therefore, overrule both of the defense's suppression motions.